UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

DWAIN BAGWELL                                                                    PLAINTIFF

V.                          CASE NO. 3:17-CV-170-BD

SOCIAL SECURITY ADMINISTRATION                                       DEFENDANT

## ORDER

### I.  Introduction:

On December 16, 2014, Dwain Bagwell applied for supplemental security income benefits, alleging disability beginning on February 13, 1996.[1] (Tr. at 22) Mr. Bagwell's claims were denied initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Mr. Bagwell's application. (Tr. at 35) Mr. Bagwell requested that the Appeals Council review the ALJ's decision, but that request was denied. (Tr. at 1) Therefore, the ALJ's decision now stands as the final decision of the Commissioner. Mr. Bagwell filed this case seeking judicial review of the decision denying him benefits.

For reasons stated below, the Court[2] affirms the decision of the Commissioner.

---

[1] For supplemental security income cases, the relevant time-period for benefits begins with the application date.

[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

## II. The Commissioner's Decision:

The ALJ found that Mr. Bagwell had not engaged in substantial gainful activity since the application date of December 16, 2014. (Tr. at 24) At step two of the five-step analysis, the ALJ found that Mr. Bagwell had the following severe impairments: arthropathies, obesity, and depressive disorder. *Id*.

After finding that Mr. Bagwell's impairments did not meet or equal a listed impairment (Tr. at 25), the ALJ determined that Mr. Bagwell had the residual functional capacity ("RFC") to perform the full range of work at the light exertional level, with some limitations. He could do no frequent bending, crouching, climbing, or crawling. (Tr. at 27) He would be limited to unskilled work, or work where interpersonal contact is incidental to the work performed. *Id*. He would be limited to work where the complexity of tasks is learned and performed by rote, involves few variables, and requires little independent judgment. *Id*. The supervision required must be simple, direct, and concrete. *Id*. Mr. Bagwell could not perform a job where he deals with the general public. *Id*.

The ALJ found that Mr. Bagwell had no past relevant work. (Tr. at 34) At step five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find, based on Mr. Bagwell's age, education, work experience and RFC, that he was capable of performing work in the national economy as small products assembler and inspector/hand packer. (Tr. at 35) The ALJ determined, therefore, that Mr. Bagwell was not disabled. *Id.*

## III. Discussion:

A. Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence and free of legal error. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means "enough that a reasonable mind would find it adequate to support he ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009)(citation omitted). In making this determination, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

B. Mr. Bagwell's Arguments on Appeal

In this appeal, Mr. Bagwell contends that the ALJ's decision to deny benefits is not supported by substantial evidence because he met Listing 12.05 for intellectual disability. He also argues that the RFC assigned by the ALJ identifies work that is beyond his functional capacity.

The medical evidence Mr. Bagwell submitted consists of only 56 pages, and some of those records are from times well before the relevant time-period. A mental evaluation from high school stated that his social history did not indicate medical or developmental problems that would relate to learning difficulty. (Tr. at 69) Mr. Bagwell achieved a Wechsler full-scale intelligence score of 68, with a verbal score of 64. (Tr. at 71) The

3

examiner found that Mr. Bagwell was operating in the mild range of mental retardation. (Tr. at 72)

Another test administered in high school revealed a full scale IQ of 67 with a verbal IQ of 66 and a performance IQ of 74. (Tr. at 67) That examiner found that Mr. Bagwell could communicate effectively and did not have limitations in speech or language, but operated in the range for mental retardation. *Id*. The examiner found no physical limitations. (Tr. at 68)

George DeRoeck, Psy.D., examined Mr. Bagwell in March 2003, when Mr. Bagwell was 18 years old. (Tr. at 57) This also pre-dated the relevant time-period. Mr. Bagwell related that he had smoked cannabis for three years. (Tr. at 59) He confirmed he still smoked in more recent records. Mr. Bagwell was cooperative in the examination and did not appear angry or irritable. (Tr. at 60) His thoughts were logical and coherent. *Id*. He was goal-directed and could communicate effectively. *Id*. No loss of attention was noted. *Id*. Dr. DeRoeck scored Mr. Bagwell in the mildly intellectually deficient range, but said that he could maintain employment with the benefit of on-the-job training. (Tr. at 64)

On April 2, 2015, over a decade after the previous medical evidence, Vickie Caspell, Ph.D., performed a mental diagnostic evaluation on Mr. Bagwell (Tr. at 288) Mr. Bagwell was cooperative and displayed no remarkable hostility. (Tr. at 289) He had signs of anxiety and depression. *Id*. His affect was appropriate. *Id*. His speech was fluent and

goal-directed. *Id*. His thought process and thought content were unremarkable. *Id*. He performed adequately on mental function tests and was not operating within the intellectual disability range. (Tr. at 290)

Dr. Caspell opined that Mr. Bagwell was capable of adequate and socially appropriate communication and interaction. (Tr. at 291) He could communicate effectively. *Id*. He was able to sustain attention and concentration. (Tr. at 292) He had no difficulty with persistence. *Id*. He did not display cognitive slowing. *Id*.

Roger Troxel, M.D., performed a physical evaluation on May 19, 2015. He found somewhat limited range of motion in Mr. Bagwell's back and extremities. (Tr. at 297-298) His reflexes were intact and he had no motor weakness or atrophy. (Tr. at 299) Straight-leg raises were negative. *Id*. Mr. Bagwell stated he was unable to walk on heels and toes and arise from a squatting position. *Id*. Dr. Troxel assigned a mildly decreased ability to walk, stand, lift, and carry. (Tr. at 300) He noted that Mr. Bagwell was a slow learner with decreased memory. *Id*.

After only one visit, Herman Clements, M.D., completed a check-box form on Mr. Bagwell's mental capacity. Dr. Clements found several marked and extreme limitations in cognitive function and ability to perform in a work environment. (Tr. at 308) The ALJ properly noted that Dr. Clements did not have a longitudinal treatment relationship with Mr. Bagwell and gave the opinion little weight because of it. The opinion also contradicted the relatively normal examination results from Dr. Caspell's examination

5

and contradicted the opinions of two state-agency doctors, who found mild-to-moderate limitations on mental function. (Tr. at 110, 121)

An ALJ may properly discount or disregard the opinion of a treating physician when other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of an opinion. *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010). And Dr. Clements's opinion was on a short form with little elaboration. A conclusory checkbox form has little evidentiary value when it cites to no medical evidence and provides little or no elaboration. *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012).

The ALJ assigned a proper mental RFC based on the medical evidence. A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). Here, the ALJ factored in the limited amount of evidence, the lack of consistent treatment, and the provider opinions that Mr. Bagwell would have, at most, mild restrictions in workplace activities. The RFC included several mental restrictions, which revealed that the ALJ credited Mr. Bagwell's complaints of mental disability, just not to the extent alleged.

As for the assignment to light work, there is no evidence contradicting the ALJ's finding. Mr. Bagwell did not seek treatment for physical problems, beyond one visit in the same month in which the ALJ issued his opinion, and the only medical opinion in the record about physical problems suggests only mild limitations. Aside from a few limitations on range-of-motion, the physical exam conducted by Dr. Troxel was normal. And it was consistent with the findings of two state-agency doctors, who concluded that Mr. Bagwell could work at the light level. (Tr. at 107, 124) The RFC properly incorporated all of Mr. Bagwell's limitations.

Mr. Bagwell claims that he met Listing 12.05 for intellectual disability. The Listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just "substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work. *Id*.

In order to meet the requirements of Listing 12.05, Mr. Bagwell would have to show: (a) significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested prior to age 22; (b) a valid verbal, performance, or full-scale IQ of 60 through 70; and (c) a physical or other impairment imposing an additional and significant work-related limitation of function. 20 C.F.R. Pt. 404, Subpt. P,

App. 1. § 12.05. While Mr. Bagwell did test in the range required for prong (b), that testing occurred a decade or more before the relevant time-period. Such remote evidence does not support the allegation of current-day intellectual disability. And Dr. Caspell found that Mr. Bagwell performed well on mental cognition tests. She found few limitations on workplace intellectual functioning.

Finally, Mr. Bagwell did not meet prong (c) above, because he did not have another impairment imposing additional and significant limitation of function. To meet a listing, an impairment must meet all of the listing's specified criteria. *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010). Mr. Bagwell did not show he met the listed impairment.

## IV. **Conclusion:**

There is substantial evidence to support the Commissioner's decision to deny benefits, and the Court finds no legal error. The RFC assigned by the ALJ incorporated all of Mr. Bagwell's limitations supported by the evidence, and the ALJ corrected determined that Mr. Bagwell did not meet a Listing. The finding that Mr. Bagwell was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is, affirmed. The case is dismissed, with prejudice.

IT IS SO ORDERED this 30th day of May, 2018.

_____
UNITED STATES MAGISTRATE JUDGE